## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 21 2016, 6:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Lisa M. Johnson
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Eric Johnson,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | December 21, 2016<br><br>Court of Appeals Case No.<br>49A02-1602-CR-385<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Marc T. Rothenberg, Judge<br><br>Trial Court Cause No.<br>49G02-1402-MR-6525 |

**Pyle, Judge.**

# Statement of the Case

Eric Johnson ("Johnson") appeals his conviction by jury of murder,[1] Class B felony robbery,[2] two counts of Class B felony criminal confinement,[3] and Class A misdemeanor carrying a handgun without a license.[4] His sole argument is that there is insufficient evidence to support his convictions because the State failed to establish his identity beyond a reasonable doubt. Concluding that the evidence is sufficient, we affirm.

We affirm.

# Issue

The sole issue for our review is whether there is sufficient evidence to support Johnson's convictions.

# Facts

In February 2014, Dustin Woods ("Woods") and Michael Norris ("Norris") drove from their home in Brazil, Indiana to Indianapolis in Norris' 1994 Nissan Altima. They intended to sell various items, including antiques, toys, and

---

[1] IND. CODE § 35-42-1-1.

[2] I.C. § 35-42-5-1.

[3] I.C. § 35-42-3-3.

[4] I.C. § 35-47-2-1.

electronics at thrift stores and flea markets. They also planned to purchase a large amount of marijuana to sell in Brazil.

[4] When they arrived in the Indianapolis area, the two men checked into a motel in Plainfield. Woods contacted an acquaintance, Alejandro Mauricio ("Mauricio"), who stopped by the motel to visit with Woods while Norris went out. Woods told Mauricio that he was trying to find buyers for some Ecstasy. Mauricio told Woods that he might know of a buyer. However, Mauricio later admitted that he was planning to rob Woods. When Mauricio left the motel early the next morning, he texted Johnson the following message: "I got one it b[e] ready in a few hours." (State's Ex. 71).

[5] Later that morning, Woods and Norris purchased $1500.00 worth of marijuana and moved to a less expensive motel on the west side of Indianapolis. A few hours later, Mauricio and Johnson arrived at the motel in Mauricio's car. Johnson was wearing a black stocking cap, a black sweat suit, and removable metallic teeth. Both men were armed. They went to Woods and Norris' room, brandished their guns, tied up Woods and Norris with duct tape, and robbed them.

[6] As soon as Mauricio and Johnson ran out the door, Woods untied himself and ran after them. As Woods leaped over the second floor balcony to pursue the men, Johnson shot and killed him. Johnson then drove away in Mauricio's car with Mauricio's phone. Mauricio drove away in Norris' Nissan. However, he soon discovered that he had a flat tire. Mauricio was attempting to change the

tire when he noticed a young man walking down the street and asked to use his cell phone. Mauricio telephoned Johnson at Mauricio's number and asked Johnson to pick him up.

[7]     Before picking up Mauricio, Johnson returned to the east side of Indianapolis to the house that he shared with Dramaine Cotton ("Cotton"). Cotton was watching television when Johnson came in the house wearing black clothing and carrying a brown box. When Cotton asked Johnson where he had gotten the box, Johnson responded that he had "hit a lick on the west side." (Tr. 278). Johnson changed his clothes, picked up Mauricio, and took him home.

[8]     In the meantime, the young man who had lent his cell phone to Mauricio noticed the police at the motel and approached them. The young man told the officers about the man who had borrowed his phone, and the police were able to look up the number that Mauricio had called. Based on this information, the police identified Mauricio, who matched a description given by Norris. Norris subsequently identified Mauricio in a photo array.

[9]     This information led the police to Mauricio's house, where the police found Johnson and Cotton sitting in a car in front of the house. Johnson slid a gun under the front passenger's seat where he was sitting when he saw the police. All three men were taken into custody and interviewed. A search of Johnson's bedroom revealed Norris' credit and identification cards and phone as well as a black stocking cap and a set of metallic teeth.

Johnson was arrested and charged with several counts, including murder, Class B felony robbery, two counts of Class B felony criminal confinement, and Class A misdemeanor carrying a handgun without a license. At trial, Mauricio testified that Johnson shot Woods. The evidence further revealed that the gun found under Johnson's seat at the time he was arrested had been used to kill Woods. Cell phone records indicated that Johnson's cell phone had been near the motel at the time the murder occurred. In addition, someone had used Johnson's cell phone to search Fox 59 News for information about Woods' murder. Further, a roll of duct tape found in the vehicle Mauricio and Johnson drove to the motel matched the duct tape used to bind Woods and Norris.

The jury convicted Johnson of all counts, and the trial court sentence him to an aggregate sentence of ninety-eight years. Johnson now appeals his convictions.

## Decision

Johnson argues that there is insufficient evidence to support his convictions because the State failed to establish his identity beyond a reasonable doubt. Our standard of review for sufficiency of the evidence claims is well settled. We consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not reweigh the evidence or judge witness credibility. *Id.* We will affirm the conviction unless no reasonable fact finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* The evidence is sufficient if an inference may be reasonably drawn from it to support the verdict. *Id.* at 147.

[13] Johnson argues that "the evidence is insufficient to prove beyond a reasonable doubt that [he] participated in the offenses for which he stands convicted." (Johnson's Br. 5). Specifically, according to Johnson, "[t]here are no fingerprints or DNA connecting [him] to the offenses [and] [t]he State's case against him consists almost entirely of circumstantial evidence and the highly questionable testimony of [his] co-defendant." (Johnson's Br. 12).

[14] However, our review of the evidence reveals that Mauricio testified that he and Johnson went to the motel with a plan to rob Norris and Woods and that Johnson shot Woods. Johnson slid the gun he used to kill Woods under the front passenger's seat of the car where he was sitting when the police arrived to question Mauricio. Norris' identification and credit cards and phone were found in Johnson's bedroom. Cell phone records indicated that Johnson was in the area of the motel when Woods was killed. The records also indicated that someone had used Johnson's phone to search Fox 59 News for information about the murder. In addition, a roll of duct tape found in the vehicle Mauricio and Johnson drove to the motel matched the duct tape used to bind Woods and Norris. We agree with the State that this is ample evidence from which the jury could have inferred beyond a reasonable doubt that Johnson committed the crimes. Johnson's argument is simply a request that we reweigh the evidence, which we cannot do. *See Drane*, 867 N.E.2d at 146.

[15] Affirmed.

Bradford, J., and Altice, J., concur.